## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONOCOPHILLIPS GULF OF PARIA B.V., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-mc-00264-LPS |
| | ) | |
| CORPORACIÓN VENEZOLANA DEL PETRÓLEO, S.A., and PETRÓLEOS DE VENEZUELA, S.A., | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |
| PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED and CONOCOPHILLIPS PETROZUATA B.V., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:19-mc-00342-LPS |
| | ) | |
| v. | ) | |
| | ) | |
| PETRÓLEOS DE VENEZUELA, S.A., CORPOGUANIPA, S.A., and PDVSA PETRÓLEO, S.A., | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |
| RED TREE INVESTMENTS, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Nos. 1:22-mc-00068-LPS & |
| v. | ) | 1:22-mc-00069-LPS |
| | ) | |
| PETRÓLEOS DE VENEZUELA, S.A., and PDVSA PETRÓLEO, S.A., | ) ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | | |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR ISSUANCE AND SERVICE OF WRITS *FIERI FACIAS*

OF COUNSEL:
Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

Samuel Taylor Hirzel, II (#4415)
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorney for Petróleos de Venezuela, S.A.,
Corporación Venezolana del Petróleo, S.A.,
Corpoguanipa, S.A., and PDVSA Petróleo, S.A.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ................................................................1

SUMMARY OF ARGUMENT .......................................................................................2

STATEMENT OF FACTS ..............................................................................................4

ARGUMENT ...................................................................................................................6

I.   This Court May Not At This Time Issue Unconditional Writs Of Attachment
     To Plaintiffs Or Include Their Judgments As Additional Judgments In The
     *Crystallex* Sale Process .........................................................................................6

     A.   Under OFAC's Regulations And License Restrictions, This Court May
          Not At This Time Issue Unconditional Writs Of Attachment To Plaintiffs ................6

     B.   Under Delaware Law, This Court May Not At This Time Include Plaintiffs'
          Judgments As Additional Judgments In The *Crystallex* Sale Process .........................7

          1.   Only The Judgments Of Creditors With Valid Attachments May Be
               Included In The Sale Process .................................................................7

          2.   Plaintiffs Cannot Obtain A Valid Attachment On The PDVH Shares
               Because The Physical Share Certificate Cannot Be Seized ...................9

II.  There Is No Need To Reach The Priority Of Additional Judgments At This Time .............15

CONCLUSION ...............................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aetna Ins. Co. v. Hallock*,
   73 U.S. 556 (1867)..................................................................................................8

*Audio Technica U.S., Inc. v. United States*,
   963 F.3d 569 (6th Cir. 2020) ................................................................................14

*Castro v. ITT Corp.*,
   598 A.2d 674 (Del. Ch. 1991)...............................................................................10

*Comcast Corp. v. FCC*,
   600 F.3d 642 (D.C. Cir. 2010)...............................................................................13

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   24 F.4th 242 (3d Cir. 2022) ....................................................................................4

*Dam Things from Denmark v. Russ Berrie & Co., Inc.*,
   290 F.3d 548 (3d Cir. 2002)...................................................................................13

*Deng v. HK Xu Ding Co.*,
   No. N21J-04630-AML, 2023 WL 3318322 (Del. Super. Ct. May 8, 2023)...............10, 11, 12

*Ezekiel v. Michel*,
   66 F.3d 894 (7th Cir. 1995) ...................................................................................13

*Hegna v. Islamic Republic of Iran*,
   376 F.3d 226 (4th Cir. 2004) ..................................................................................8

*In re Kane*,
   628 F.3d 631 (3d Cir. 2010)...................................................................................13

*John Julian Constr. Co. v. Monarch Builders, Inc.*,
   306 A.2d 29 (Del. Super. Ct. 1973) ........................................................................9

*Malloy v. Behrens*,
   971 N.W.2d 392 (N.D. 2022) ..................................................................................8

*Mills v. State*,
   201 A.3d 1163 (Del. 2019) ....................................................................................11

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*,
   243 F.3d 773 (3d Cir. 2001)...................................................................................14

*Moreland v. Alpert*,
   124 P.3d 896 (Colo. App. 2005) ............................................................................10

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)...............................................................................................14

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
   No. 19-mc-290, 2022 WL 611563 (D. Del. Mar. 2, 2022)...................................4, 9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
   No. 19-mc-290, 2023 WL 2609248 (D. Del. Mar. 23, 2023) ...................................................5

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
   81 F.3d 355 (3d Cir. 1996) ...............................................................................................14

STATUTES

6 Del. C. § 8-102 ...........................................................................................................8, 11

6 Del. C. § 8-112 ...........................................................................................8, 9, 10, 11

8 Del. C. § 168 .......................................................................................................................12

8 Del. C. § 324 ........................................................................................................ *passim*

Ch. 339, Laws of 1998, § 68 ...........................................................................................11

OTHER AUTHORITIES

31 C.F.R. § 591.202 ...........................................................................................................4, 6

31 C.F.R. § 591.310 ...............................................................................................................12

31 C.F.R. § 591.407 .................................................................................................................4

33 C.J.S. Executions § 345 .....................................................................................................8

Fed. R. Civ. P. 69 ....................................................................................................................7

Defendants Petróleos de Venezuela, S.A. (PDVSA), Corporación Venzeolana del Petróleo, S.A., Corpoguanipa, S.A., and PDVSA Petróleo, S.A. (collectively, the PDVSA Parties) respectfully submit this brief in opposition to the motions for issuance and service of writs of attachment by Red Tree Investments, LLC (Red Tree), 22-mc-68 D.I. 28 and 22-mc-69 D.I. 28; and ConocoPhillips Gulf of Paria B.V., Phillips Petroleum Company Limited, and ConocoPhillips Petrozuata B.V. (collectively, ConocoPhillips), 19-mc-342 D.I. 51 and 22-mc-264 D.I. 22. The PDVSA Parties contend that Plaintiffs' motions should be denied.

## NATURE AND STAGE OF PROCEEDINGS

1.      *Crystallex* **Litigation.** As this Court is well aware, *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, Misc. No. 17-mc-151, is a post-judgment execution proceeding by Crystallex International Corporation (Crystallex), a judgment creditor of the Bolivarian Republic of Venezuela (the Republic). Pursuant to 8 Del. C. § 324, Crystallex obtained and served a writ of attachment to execute upon shares of stock in PDV Holding, Inc. (PDVH) owned by PDVSA, a Venezuelan corporation that is wholly owned by the Republic. 17-mc-151 D.I. 95. In October 2022, this Court entered a Sale Procedures Order (SPO) setting forth a process to sell as many PDVH shares "as necessary to satisfy the outstanding judgment of Crystallex." 17-mc-151 D.I. 481 at 2. The SPO also provides a mechanism for this Court to include "additional judgments" in the sale process "in accordance with applicable law." *Id.* ¶ 30. On May 10, 2023, the Court directed the Sale Process Parties to brief (1) whether any other "judgments should be regarded as 'Additional Judgments' under" the SPO; (2) whether "the Court should issue full, unconditional orders of attachment … to any creditors" (and if so, whether it should "direct service" of those attachment orders); and (3) how the Court should "determine the priority of any … Additional Judgments." 17-mc-151 D.I. 559 ¶ 3.

1

2. **These Proceedings.** These cases involve post-judgment proceedings by Plaintiffs ConocoPhillips and Red Tree, judgment creditors of PDVSA. In 2022, this Court granted Plaintiffs conditional orders concerning attachments that authorize the clerk to sign and seal the writs of attachments upon evidence that OFAC "has either (i) authorized the issuance and service of a writ of attachment or (ii) removed the sanctions under which the PDVH shares are currently blocked property." 19-mc-432 D.I. 43; 22-mc-264 D.I. 20; 22-mc-68 D.I. 15; 22-mc-69 D.I. 15. In May 2023, Plaintiffs asked this Court to issue them unconditional writs of attachment. In the May 10 order in the *Crystallex* litigation, the Court directed the parties to complete briefing on these requests by June 14, 2023. 17-mc-151 D.I. 559 ¶ 6.

## SUMMARY OF ARGUMENT

1. This Court may not at this time lawfully issue unconditional writs of attachment to Plaintiffs. OFAC's regulations unambiguously require a specific license before writs of attachment may be issued—as this Court previously has recognized—and OFAC's non-enforcement policy concerning participation in the sale process does not extend to issuance of unconditional writs of attachment. Although OFAC has licensed this Court to issue writs of attachment to certain creditors, that license is expressly limited to a creditor who is "named an 'Additional Judgment Creditor' by the Court pursuant to the Sale Procedures Order." 17-mc-151 D.I. 555 at 8.

This Court, however, may not at this time lawfully include any other creditors' judgments as "additional judgments" for purposes of the sale process, meaning Plaintiffs also may not be issued unconditional writs of attachment now. Under Delaware law, a judgment creditor cannot obtain a court-ordered sale of shares unless it first obtains a valid attachment against the shares. And here, Plaintiffs cannot obtain a valid attachment against the PDVH shares merely through issuance of writs of attachment served upon PDVH. As a Delaware court confirmed just this

2

month, Delaware law provides that the attachment is not laid until the officer executing the writ actually seizes the physical share certificate, which neither PDVH nor any of the PDVSA Parties possesses. Instead, that certificate presumably is in the hands of the illegitimate and independent Maduro regime.

Although this Court previously held that PDVSA was judicially estopped from contending that Crystallex's writ of attachment must be quashed on this ground in light of certain representations made in connection with the validity of Crystallex's attachment back in 2018, that ruling does not preclude the PDVSA Parties from making this argument against any other creditors, such as Plaintiffs. Regardless of this Court's prior estoppel ruling as to Crystallex, the PDVSA Parties have never made any inconsistent representations about whether additional creditors can obtain new attachments that are valid despite the absence of the physical certificate. And because Plaintiffs have not attempted to invoke any process under Delaware law for cancelling and reissuing the physical certificate, which at a minimum would require a specific license from OFAC, no attachments issued for Plaintiffs would be effective and no shares can be sold to satisfy their judgments. Accordingly, their judgments cannot qualify as "additional judgments."

2.      Because this Court should neither issue unconditional writs of attachments nor include any additional judgments in the *Crystallex* sale process, there is no need for it to resolve the relative priority of any additional creditors now. If this Court nevertheless disagrees, the PDVSA Parties take no position here on this novel and complicated issue, as it is primarily relevant to the relationship among the creditors.

## STATEMENT OF FACTS

In August 2018 in the *Crystallex* case, this Court issued a writ of attachment *fieri facias* to attach PDVSA's shares of stock in PDVH in satisfaction of Crystallex's judgment. 17-mc-151 D.I. 95. The writ was served on PDVH, as garnishee of PDVSA, 17-mc-151 D.I. 96, and it directed PDVH to file an answer that would "specify what shares of stock and other assets or rights incident to that stock ownership belonging to or owing to PDVSA … you currently possess," 17-mc-151 D.I. 95 at 7. The writ further directed PDVH, as the garnishee, "to retain the items stated by you in your answer" pending further order of the court. *Id.* PDVH's answer explained that PDVSA owned all "1,000 shares of PDVH stock, which are certificated in a single instrument," but that "PDVH does not possess any certificated shares of PDVH stock" because it did not hold the physical certificate. D.I. 177 ¶ 7.

In 2019, the President of the United States "blocked any transfer or dealing in PDVSA's property," and the U.S. Treasury Department's Office of Foreign Assets Control (OFAC) prohibited "'the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect [blocked] property or interests in [blocked] property,'" absent "'a specific license issued by OFAC.'" *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 24 F.4th 242, 247 (3d Cir. 2022) (quoting 31 C.F.R. § 591.407); *see* 31 C.F.R. § 591.202(e) (prohibiting "any attachment" against the blocked property absent a "license[]"). Crystallex was issued a writ of attachment in 2017 "because Venezuelan property in the United States had not yet been blocked," and it remains the only entity to have been issued an unconditional writ of attachment on the PDVH shares. *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 19-mc-290, 2022 WL 611563, at *3 n.5 (D. Del. Mar. 2, 2022) (*OIEG I*).

4

In October 2022, this Court entered the SPO in the *Crystallex* case, which set forth a process to sell as many PDVH shares "as necessary to satisfy the outstanding judgment of Crystallex." 17-mc-151 D.I. 481 at 2. The SPO also contains a mechanism for this Court to include "additional judgments" in the sale process "in accordance with applicable law." *Id.* ¶ 30. At various points in 2022, this Court also granted Plaintiffs Red Tree and ConocoPhillips conditional orders concerning attachments that authorize the clerk to sign and seal the writs of attachments upon evidence that OFAC "has either (i) authorized the issuance and service of a writ of attachment or (ii) removed the sanctions under which the PDVH shares are currently blocked property." 19-mc-432 D.I. 43; 22-mc-264 D.I. 20; 22-mc-68 D.I. 15; 22-mc-69 D.I. 15.

On April 28, 2023, the parties learned that OFAC has adopted a "nonenforcement policy … limited to the facts and circumstances of" the *Crystallex* litigation stating that it will "not take enforcement action against individuals or entities for participating in or complying with the Prefatory Steps set out in the Sales Order." 17-mc-151 D.I. 553-1 at 2-3. OFAC then issued a license on May 1, 2023, authorizing "the issuance and service of a writ of attachment *fieri facias* for any party named an 'Additional Judgment Creditor' by the Court pursuant to the Sale Procedures Order." 17-mc-151 D.I. 555 at 8. Two sets of creditors are now asking this Court to designate their judgments "additional judgments" under the SPO and to issue them unconditional writs of attachment against the PDVH shares. *See* 17-mc-151 D.I. 558. One set consists of Plaintiffs here, two creditors of *PDVSA*. The other set consists of six creditors of *the Republic* (the alter-ego creditors) that have obtained a ruling that PDVSA is the Republic's alter ego. *See OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 19-mc-290, 2023 WL 2609248 (D. Del. Mar. 23, 2023) (*OIEG II*). That ruling is currently on appeal to the Third Circuit, which has stayed proceedings in all the alter-ego cases. *See* 17-mc-151 D.I. 559 ¶ 2. This Court has ordered briefing

on whether it should grant both sets of creditors their requests and how it should determine the priority of any additional judgments it includes in the sale process. *Id.* ¶ 3. It has also directed the parties to complete briefing on Plaintiffs' attachment requests by June 14, 2023. *Id.* ¶ 6.

## ARGUMENT

I.      **This Court May Not At This Time Issue Unconditional Writs Of Attachment To Plaintiffs Or Include Their Judgments As Additional Judgments In The *Crystallex* Sale Process.**

A.      **Under OFAC's Regulations And License Restrictions, This Court May Not At This Time Issue Unconditional Writs Of Attachment To Plaintiffs.**

OFAC regulations unambiguously provide that the issuance of "any attachment … is null and void with respect to" the PDVH shares "[u]nless licensed," 31 C.F.R. § 591.202(e), as this Court has previously recognized. *See* 17-mc-151 D.I. 234 at 17 (observing that "the current sanctions regime does appear to block issuance of new writs of attachment on Venezuelan assets in the United States without an OFAC license"). Accordingly, this Court's conditional orders concerning attachments authorize the clerk to sign and seal the writs of attachments only upon evidence that OFAC "has either (i) authorized the issuance and service of a writ of attachment or (ii) removed the sanctions under which the PDVH shares are currently blocked property." *E.g.*, 19-mc-432 D.I. 43.

OFAC, of course, has yet to lift the applicable sanctions. At most, it has adopted a "nonenforcement policy … limited to the facts and circumstances of" the *Crystallex* litigation stating that it will "not take enforcement action against individuals or entities for participating in or complying with the Prefatory Steps set out in the Sales Order." 17-mc-151 D.I. 553-1 at 2-3. That nonenforcement policy, however, does not and cannot alter the sanctions set forth in executive orders and binding regulations, let alone with respect to the distinct act of issuing "any attachment." 31 C.F.R. § 591.202(e).

And while OFAC has granted a specific license to this Court to issue writs of attachment to certain creditors, that license is expressly limited to those creditors who are properly "named as an 'Additional Judgment Creditor' by the Court pursuant to the Sale Procedures Order." 17-mc-151 D.I. 555 at 8. As demonstrated below, no other creditors can be lawfully added to the sale process at this time, meaning they cannot lawfully be issued unconditional writs of attachment either.

**B.      Under Delaware Law, This Court May Not At This Time Include Plaintiffs' Judgments As Additional Judgments In The *Crystallex* Sale Process.**

The SPO recognizes that this Court may include "additional judgments" in the sale process only "in accordance with applicable law." D.I. 481 ¶ 30. Under Delaware law, which applies here, Fed. R. Civ. P. 69(a), only the judgments of creditors with valid attachments may be included. And no other creditors can currently obtain valid attachments against the PDVH shares, because the physical certificate is not in PDVH's possession and thus cannot be seized by the marshal through service of the writ on PDVH. Instead, it presumably is in the hands of the Maduro regime. As the Delaware Superior Court recently held, the certificate-seizure requirement was expressly added by the General Assembly to prevent an attachment sale in precisely these circumstances.

**1.      Only The Judgments Of Creditors With Valid Attachments May Be Included In The Sale Process**.

As this Court has recognized, Delaware law—specifically, Section 324 of the Delaware General Corporation Law, 8 Del. C. § 324—governs the process to sell the PDVH shares to execute on creditors' judgments against PDVSA or the Republic. 17-mc-151 D.I. 481 at 5-6, 8, 19; *see* Fed. R. Civ. P. 69(a). Section 324 provides, in relevant part:

> The shares of any person in any corporation … may be attached … if such person appears on the books of the corporation to hold or own such shares …. So many of the shares … may be sold at public sale to the highest bidder, as shall be sufficient to satisfy the debt … upon an order issued therefor by the court from which the attachment process issued, and after such notice as is required for sales upon

> execution process. Except as to an uncertificated security as defined in § 8-102 of Title 6, *the attachment is not laid and no order of sale shall issue unless* § 8-112 of Title 6 has been satisfied.

8 Del. C. § 324(a) (emphasis added). Section 324(a) thus requires a sequential process in which "the attachment is … laid" and only then may a sale be held "upon an order issued therefor by the court from which the attachment process issued." *Id.* Moreover, only "[s]o many of the shares … may be sold … as shall be sufficient to satisfy the debt" of the attachment holder. *Id.* By linking the attachment and sale prerequisites, and by limiting the sale to the number of shares necessary to the attachment-holder's judgment, Section 324 requires that any sale be limited to judgment creditors holding valid attachments. In other words, because this Court currently may sell only as many of the PDVH shares as necessary to satisfy Crystallex's judgment, it cannot hold an auction to sell additional shares except to the extent necessary to satisfy the judgments of the holders of additional valid attachments. Accordingly, this Court may not proceed with a sale to satisfy any creditor's judgment unless and until that creditor has an effective attachment on the PDVH shares.

Bedrock legal principles reinforce Section 324's unambiguous text. The issuance of a valid writ of attachment is "a critical step in the eventual execution of the property." *Hegna v. Islamic Republic of Iran*, 376 F.3d 226, 233 (4th Cir. 2004); *see* 33 C.J.S. Executions § 345 ("An execution sale must be made by an officer having the proper authority to do so by statute, judgment, *and* writ of execution." (emphasis added)). Without a valid writ, a purported execution sale generally is deemed void. *See, e.g.*, *Aetna Ins. Co. v. Hallock*, 73 U.S. 556, 559 (1867); 33 C.J.S. Executions § 345. Indeed, the North Dakota Supreme Court applied these principles just last year in particularly stringent fashion, invalidating an execution sale on a home because a necessary appraisal that was required to occur *before* the writ of execution had issued instead took place *after* the writ's issuance. *See Malloy v. Behrens*, 971 N.W.2d 392, 397 (N.D. 2022). Moreover, because "attachment is a summary process in derogation of the common law," attachment statutes must be

"strictly construed in favor of the party against whom the proceeding is employed," including as to "the method of enforcing the remedy." *John Julian Constr. Co. v. Monarch Builders, Inc.*, 306 A.2d 29, 33 (Del. Super. Ct. 1973). Thus, any doubt as to whether Section 324 requires a valid attachment to participate in a sale process must be resolved in favor of the PDVSA Parties.

Consistent with these strict requirements, this Court has always understood that a valid attachment is necessary for a creditor to have its judgment added to the sale process. The SPO itself describes the combination of "the Crystallex Judgment" and the "Additional Judgments" as the "*Attached* Judgments," and provides that "no PDVH Shares shall be sold, nor proceeds from any sale thereof distributed, to satisfy any judgments that are not *Attached* Judgments." 17-mc-151 D.I. 481 ¶ 30 (emphases added). And last year, this Court ruled that it would not "add ConocoPhillips' judgment to the sale process ... unless ConocoPhillips establishes a concrete interest in the PDVH Shares," which would occur only when "a lien on" the PDVH shares "is created under Delaware law." *OIEG I*, 2022 WL 611563, at *8-9 & n.17.

### 2. Plaintiffs Cannot Obtain A Valid Attachment On The PDVH Shares Because The Physical Share Certificate Cannot Be Seized.

Plaintiffs cannot obtain a valid attachment against the PDVH shares because the physical share certificate cannot be seized, as Delaware law requires, merely through service on PDVH. Although this Court held in 2021 that PDVSA was judicially estopped from making this argument in seeking to quash *Crystallex's* 2018 writ of attachment, the PDVSA Parties have never taken even arguably inconsistent positions, let alone clearly inconsistent positions, about the ability of *additional creditors* to obtain valid attachments now.

**a.** As noted, Section 324 provides that "[e]xcept as to an uncertificated security"—an exception that does not apply here—an "attachment *is not laid and no order of sale shall issue unless* § 8-112 of Title 6 has been satisfied." 8 Del. C. § 324(a) (emphasis added); *see* 17-mc-151

D.I. 177 ¶ 7 (explaining that the PDVH shares are "certificated"). Section 8-112 in turn provides that "the interest of a debtor in a certificated security" such as the PDVH shares "may be reached by a creditor only by *actual seizure of the security certificate* by the officer making the attachment or levy." 6 Del. C. § 8-112(a) (emphasis added).

Notably, the Delaware Superior Court just this month confirmed that these statutes mean what they say: "Delaware law requires physical seizure of a stock certificate before certificated shares may be attached and sold." *Deng v. HK Xu Ding Co.*, No. N21J-04630-AML, 2023 WL 3318322, at *1 (Del. Super. Ct. May 8, 2023). Section 324 and Section 8-112 are "unambiguous" in establishing that "to attach certificated shares of a corporation and obtain an order to sell the security to satisfy a judgment, the officer making the attachment must actually seize the certificate" through "physical seizure." *Id.* at *3. Thus, where the "physical seizure" of certificated shares "has not been accomplished," any request "to sell the shares" must be "denied" and any "order granting" such a request "must be vacated." *Id.* at *1.

The "history" of "Sections 324 and 8-112" confirms what the text already makes clear. *Id.* at *4. Before 1998, "Section 324(a) expressly permitted an officer to auction and sell certificated stock without physically seizing the certificate." *Id.*; *see also Castro v. ITT Corp.*, 598 A.2d 674, 682 (Del. Ch. 1991). The prior framework made Delaware an outlier among the states, as it departed from the default requirement in the Uniform Commercial Code (UCC) that attachment of certificated shares requires physical seizure of the actual certificates. *See Castro*, 589 A.2d at 680-82; *see, e.g.*, *Moreland v. Alpert*, 124 P.3d 896, 899 (Colo. App. 2005) (confirming that Colorado's adoption of this UCC requirement meant that there "must be … physical possession[]" of a stock certificate before a creditor can acquire a debtor's interest in the certificate").

In 1998, however, the Delaware General Assembly brought itself into conformity with the majority position and the UCC by amending Section 324(a) to provide that "[e]xcept as to an uncertificated security as defined in § 8-102 of Title 6, the attachment is not laid and no order of sale shall issue unless § 8-112 of Title 6 has been satisfied." 8 Del. C. § 324(a), Ch. 339, Laws of 1998, § 68. In the amendment's synopsis, the General Assembly explained it had altered Section 324 to establish that "the execution process it provides is available" for "certificated securities[] only upon satisfaction of the requirements of Section 8-112 of Title 6, including presentation of the stock certificates." *Id.*, Synopsis of Section 324; *accord* 17-mc-151 D.I. 179-1 at 14. The "synopsis to the 1998 amendments to Section 324 removes any question that the General Assembly expressly intended" that "the officer making the attachment must actually seize the certificate" in order "to sell the security to satisfy a judgment." *Deng*, 2023 WL 3318322, at *3; *see Mills v. State*, 201 A.3d 1163, 1177 (Del. 2019) (noting that a legislative "synopsis … is about as clear a statement of legislative intent as one could ask for, other than a statement to that effect in the statutory text").

As PDVH has informed this Court previously, it "does not possess any certificated shares of PDVH stock." 17-mc-151 D.I. 177 ¶ 7. Instead, the certificate—"a single instrument" for all "1,000 shares of PDVH stock"—presumably is in the hands of the illegitimate and independent Maduro regime. *Id.*; *see* 17-mc-151 D.I. 215-1 at 43. Without the physical certificate, Delaware law prohibits Plaintiffs from attaching the PDVH shares and being included in the *Crystallex* sale process. In *Deng*, for instance, the court vacated an order granting a motion to auction a debtor's stock under Section 324 to satisfy a creditor's judgment because the "stock certificate [was] in the custody of Chinese police." 2023 WL 3318322, at *1. Because the sheriff had "not seized" the "certificate" and "cannot seize it while it remains in Chinese custody," the court observed, the

"motion to sell the shares should have been denied, and the order granting that motion must be vacated." *Id.* at *1-2. Because PDVH similarly lacks the physical certificate for the shares, Plaintiffs cannot obtain a valid attachment and thus have their judgments added to the *Crystallex* sale process.[1]

      **b.**      Although this Court refused to consider the certificate-seizure issue with respect to Crystallex's attachment, its rationale is inapplicable to other creditors. In 2021, this Court held that PDVSA was judicially estopped from arguing that Crystallex's writ of attachment must be quashed because PDVH lacked a physical certificate for the shares. 17-mc-151 D.I. 234 at 23-26. According to the Court, PDVSA had "persuaded the Court not to impose a bond requirement when it stayed proceedings pending PDVSA's interlocutory appeal" by representing that Crystallex's writ of attachment "was valid" and hence provided "sufficient security in lieu of a bond." *Id.* at 24. Based on that understanding, this Court concluded that "PDVSA's new contention that the writ is not valid under Delaware law because PDVH does not possess the physical certificate—and, thus, the writ has no value to Crystallex—is inconsistent with PDVSA's prior assurances that the writ secured Crystallex." *Id.* at 25. "To permit PDVSA to avoid attachment and execution based on" this change in positions, this Court concluded, "would be grossly unfair to Crystallex." *Id.* at 26.

---

[1] Although Delaware law may provide a mechanism to secure an order compelling PDVSA, the owner of the PDVH shares, to request that PDVH cancel and reissue the certificate—at least in those cases where PDVSA is the "debtor"—Plaintiffs have not purported to invoke this process, let alone posted the requisite bond. *See* 8 Del. C. § 168(b). In all events, cancelling and reissuing the shares would, at minimum, require an additional license from OFAC. A prohibited "transfer" under OFAC's regulations includes "the making … of any … certificate," "the purpose, intent, or effect of which is to create … or alter, directly or indirectly any right, remedy, power, privilege, or interest with respect to" the PDVH shares. 31 C.F.R. § 591.310. Thus, as ConocoPhillips has observed, "reissuance" of the shares "could be deemed a transfer of an interest in blocked property," 17-mc-151 D.I. 418 at 4, and the May 3, 2023 license does not cover that act, *see* 17-mc-151 D.I. 555 at 8.

In the current context, by contrast, there is no "irreconcilable inconsistency" that would justify "dismiss[ing]" the PDVSA Parties' argument "without considering the merits." *In re Kane*, 628 F.3d 631, 638-39 (3d Cir. 2010); *see Comcast Corp. v. FCC*, 600 F.3d 642, 647 (D.C. Cir. 2010) (observing that any "[d]oubts about inconsistency often should be resolved by assuming there is no disabling inconsistency"). In assuming the validity of Crystallex's attachment, PDVSA did not say anything about the seizure requirement, and the PDVSA Parties have never suggested, much less asserted, that any new writ of attachment granted to a creditor other than Crystallex would be effective notwithstanding the inability of the marshal to seize the physical certificate. *See, e.g.*, *Dam Things from Denmark v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 559 (3d Cir. 2002) (noting that "the threshold requirement of inconsistency is not satisfied because the representations made regarding" one version of a doll in an intellectual-property dispute "do not pertain to" another version). Even if a statement that an attachment protects one creditor from loss pending appeal impliedly represents that the attachment is somehow "valid," such a statement would not necessarily imply anything about the legal requirements for obtaining a valid attachment, rather than simply an assumption that the requirements had been met in that case; and that would not necessarily imply the same is true for additional creditors. Accordingly, it "is not 'irreconcilably inconsistent,'" *id.*, for the PDVSA Parties to argue that the marshal *cannot currently seize* the physical certificate and thereby effectuate a valid attachment for additional creditors, regardless of the validity of the marshal's actions in executing Crystallex's writ of attachment *in 2018*. In short, because the additional creditors who are seeking writs of attachment are not in "the *same*" situation as Crystallex with respect to PDVSA Parties' representations, "judicial estoppel is inapplicable." *Ezekiel v. Michel*, 66 F.3d 894, 905 (7th Cir. 1995).

In any event, "the 'strong medicine' of judicial estoppel" is not warranted here. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 364 (3d Cir. 1996). "Judicial estoppel is an extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice," not "a technical defense for litigants seeking to derail potentially meritorious claims." *Id.* at 365 (cleaned up); *see also Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575 (6th Cir. 2020) ("Judicial estoppel must be 'applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement.'"). Given that "judicial estoppel is often the harshest remedy that a court can impose," this Court "may not invoke the doctrine" where that sanction is not "tailored to address the harm identified." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 784 (3d Cir. 2001) (cleaned up).

In 2021, this Court concluded that judicial estoppel was an appropriate remedy on the theory that allowing "PDVSA to avoid attachment and execution" after securing a stay without posting a bond "would be grossly unfair to Crystallex." 17-mc-151 D.I. 234 at 26. Having *already* addressed that harm, however, there would be nothing equitable about *further* sanctioning the PDVSA Parties by precluding them from advancing a meritorious defense against other creditors who have never relied on any implicit representation about whether the physical certificate must be seized for an attachment to be valid (and who are well aware of the certificate requirement, having devoted assiduous attention to the *Crystallex* proceedings). *See New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) (indicating that courts should consider "whether the party seeking to assert an inconsistent position would … impose an unfair detriment on the opposing party if not estopped"). Extending the estoppel would simply grant Plaintiffs *a windfall*, obviating their need

to satisfy a requirement under Delaware law that the General Assembly specifically adopted to bring Delaware into conformity with other jurisdictions. *See supra* at 10-11.

## II.     There Is No Need To Reach The Priority Of Additional Judgments At This Time.

For all these reasons, this Court should neither issue any unconditional writs of attachments to additional creditors nor include any additional judgments in the sale process. Accordingly, there is no need for this Court to resolve the relative priority of any (nonexistent) additional judgments now, as Plaintiffs request. *See, e.g.*, 19-mc-342 D.I. 52 at 9-12. If this Court nevertheless disagrees, the PDVSA Parties take no position on this novel and complicated issue—where creditors sought writs of attachment at different times, were granted orders contingently authorizing issuance of the writs at different times, and may be issued writs to serve at the same or different times—as the question is one that is primarily of relevance to the creditors. In all events, it would be particularly premature to resolve the relative priority of additional judgments when the status of the alter-ego creditors is the subject of the pending appeal. *See supra* at 5.

## CONCLUSION

The PDVSA Parties respectfully submit that this Court should deny Plaintiffs' motions.

HEYMAN ENERIO GATTUSO & HIRZEL LLP

OF COUNSEL:
Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

May 24, 2023

*/s/ Samuel Taylor Hirzel, II*
Samuel Taylor Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorney for Petróleos de Venezuela, S.A., Corporación Venezolana del Petróleo, S.A., Corpoguanipa, S.A., and PDVSA Petróleo, S.A.*